CONNOR, Appellant, vs. CONNOR and others, Respondents.

*March 6—June 4, 1935.*

338

For the appellant there were briefs by *E. K. Loverud* of Stoughton and *Bagley, Spohn, Ross & Stevens* of Madison, and oral argument by *W. H. Spohn* and *Myron Stevens*.

For the respondents there was a brief by *Gilbert, Ela, Heilman & Raeder,* and oral argument by *Oscar Christianson,* all of Madison.

The following opinion was filed April 2, 1935:

ROSENBERRY, C. J.   Upon this appeal it is the contention of the plaintiff that the court, under the facts and the law in this case, was in error in decreeing that the deed in question constituted a mortgage, for the reason, among others, that the court found the debt owing by Homer A. Stone to the plaintiff was paid and satisfied.   Respondents contend that the court adjudged no more than that, under the facts and circumstances, the grantors had reserved to themselves an equity of redemption, and that is all the respondents seek in the case.   Under the facts found by the court, the defendant, Homer Stone, was entitled to rescind the transaction of April 17, 1933, and have the note and mortgage that day satisfied, reinstated.   He nowhere asks for a rescission of that transaction, nor to have it set aside, but seeks to claim the benefit of the transaction so far as it satisfies the debt owing by him and, without having the debt reinstated, have a new mortgage declared in order that he may secure a new redemption right.   He has never demanded rescission or offered to give back what he received.   While he alleges that he and his brother have received a commitment from the Federal Land Bank of St. Paul by which they are entitled to a loan of $17,500, he does not ask that the right to redeem be established, but asks that the deed be declared a mortgage, the legal effect of which would be to require another action of foreclosure and a delay of a year and a half or more before the plaintiff could realize upon the property.

We are unable to harmonize defendant Stone's contentions with well-established principles of law.   We find no authority for the proposition, and we are cited to none which holds that a man circumstanced as is Homer Stone can affirm in part

what he claims to be an invalid transaction and revoke it in part. *First Wisconsin Nat. Bank v. Pedley,* 208 Wis. 628, 242 N. W. 512.

He testified upon the trial that the indebtedness was fully satisfied and discharged, and neither in his pleading nor upon the trial or elsewhere has he ever asked or consented to have it reinstated. A mortgage cannot exist without an indebtedness which is secured by it. The indebtedness is the principal consideration; the mortgage an incident to it. The extinguishment of the debt *ipso facto* extinguishes the mortgage. *Doyon & Rayne Lumber Co. v. Nichols,* 196 Wis. 387, 220 N. W. 181. It is considered, therefore, that the court was in error in decreeing the deed made April 17, 1933, to be a mortgage; there being no existing debt to be secured thereby.

It is considered that the finding of the trial court, that there was in fact overreaching, oppression, or fraud in connection with the giving of the deed on April 17, 1933, was against the great weight and clear preponderance of the evidence. The testimony of the plaintiff and of Mrs. Stone, and particularly the transaction of January 22, 1934, quite conclusively rebut the defendant, Homer Stone's testimony in that regard. Unless the mere fact that a party to a transaction is in debt of itself amounts to coercion and oppression, it is difficult to see upon what factual basis a finding to that effect can be placed. It is not claimed that the plaintiff threatened foreclosure. No doubt the specter of a foreclosure action is present in the mind of every mortgagor whose obligations are in default. It is quite apparent that in January, 1934, both Mr. and Mrs. Stone were very dubious about the ability of the plaintiff to realize more than $6,000 out of the premises, and, when Homer Stone accepted the $225.35 and gave a receipt "fulfilling all verbal obligations," he voluntarily surrendered any claim he had to a right to redeem. Whatever was outstanding was disposed of by the receipt. While it is true that the plaintiff refused to accept

the proposal that he join in an application for a loan to the Federal Farm Loan Bank, and perhaps thereby made it unnecessary for the defendant, Homer Stone, to make or keep good a tender, it is highly significant that Stone never demanded rescission prior to the commencement of the action, alleged no grounds for rescission in the complaint, did not ask rescission in the prayer for relief, nor upon the trial did Homer Stone seek any other relief than to have the deed of April 17, 1933, declared a mortgage. He at all times, under all circumstances, insists that the debt is paid; that he owes nothing. While in defendants' brief it is alleged that Homer Stone seeks nothing but equity of redemption, the defendant Stone has continuously asserted the right not to redeem but to have the deed declared a mortgage. In his effort to keep the benefits of the transaction with the plaintiff and escape the burdens, Homer Stone has taken an inconsistent position. Neither the trial court nor this court under the evidence in this case has power to decree that Homer Stone shall without his consent and against his wishes become a debtor to the plaintiff.

The mere fact that a man is a debtor, or even in more or less necessitous circumstances, does not deprive him of the power to do business, to contract in the ordinary way and bind himself by his own acts. There is in the record not a syllable of testimony that the defendant, Homer Stone, was at any time, in any manner or to any extent, misled as to the nature of the transaction into which he entered. Upon advice of able counsel, as we must assume, he has declined to subject himself to a reinstatement of his personal obligation; no doubt advisedly so. Having taken that position, as a matter of law it follows that the deed of April 17, 1933, cannot be a mortgage. There is no evidence that the plaintiff might in the exercise of ordinary care and diligence have disposed of the premises within a year for more than the amount of

money which he had coming, hence the defendant, Homer Stone, cannot recover on that basis.

*By the Court.*—The judgment appealed from is reversed, and cause remanded with directions to dismiss the counterclaim and for further proceedings in the action for partition.

FOWLER, J. (*dissenting*). I cannot agree to the decision of this case made by the court. The case seems to me to be the not uncommon one in these days of a mortgagee taking advantage of the necessities of his mortgagor and driving a hard and oppressive bargain. In the first place, we have the creditor getting land admittedly worth twice the mortgage debt for a mere cancellation of the debt. This is indicative of fraud. In the instant case there was no fraudulent representation, except the one found by the circuit judge that it was verbally agreed that the mortgagor defendants should have the same rights of redemption that they had under the mortgage, which operates as a fraud under the decision of the court. The opinion of the court states that the mortgagors are insisting that the mortgage debt is satisfied, and still asking that the land be restored to them. I do not so understand their position. While in terms they ask that the deed be declared a mortgage, they are in effect asking that the deed be set aside, from which it would follow that the mortgage and the mortgage debt would be restored.

The rule governing the setting aside of deeds from mortgagor to mortgagee and reinstating the mortgagor-mortgagee relation was recently stated in *Paul v. Smith,* 215 Wis. 613, 255 N. W. 919, as follows:

"In order to sustain such a conveyance as valid, it must be established by clear and satisfactory proof, upon closely scrutinizing the transaction, that the conveyance was voluntary on the part of the mortgagor; based on an adequate consideration; untainted by fraud; made without advantage being taken of the debtor's necessity to drive a hard bargain;

and that there was discharge of the mortgage indebtedness or at least a binding agreement to consider that indebtedness paid and discharged."

I understand this to be the settled law of this state, and that not only some of the conditions above named must exist in order that the transaction may stand, but that all of them must.

In the instant case, while some of the conditions mentioned existed, others did not, as the trial court found upon sufficient evidence. The conveyance was voluntary, if we consider an act voluntary that is not induced by actual duress. But it was not based on an adequate consideration, for the debt was only half the value of the land; and it was not made without advantage being taken of the debtor's necessities to drive a hard bargain. These vices in the transaction and others hereinafter stated seem to me to require setting aside the transaction, and restoring the relation of mortgagor and mortgagee between the parties.

The opinion of the court goes mostly on the proposition that, as it was agreed that the mortgage debt should be satisfied, and the mortgagors testified that they considered that it was satisfied, this alone should cut the mortgagors off from any relief. What the mortgagor said as to his considering the debt paid is immaterial. Such an understanding or conclusion would be mere nonsense. If the deed stands, the debt is satisfied, but, if the deed falls, the obligation is by that fact restored.

The opinion states that the mortgagors have not repaid the $50 first paid or the overcharge of one-half the taxes computed as due from the mortgagors which was afterwards paid to the mortgagors. No money whatever was paid to the mortgagors, and there is no need or occasion for them to pay these amounts or either of them to the mortgagee. The amounts were merely credited upon another mortgage debt owed by the mortgagors to the plaintiff. That credit will be

canceled when the deed is canceled. There is no difficulty whatever in restoring the parties to the precise status that existed prior to the execution of the deed without the mortgagors doing or tendering anything as condition of the restoration.

The opinion ignores the bearing upon the rights of the mortgagors of the finding of the trial judge that the plaintiff assured the mortgagors and the mortgagors understood that the mortgagors "would have the same rights under the said deed as they would have under the mortgage." This on its face is inconsistent with the other oral agreement that, if the mortgagee sold the land within a year, the mortgagors should receive the excess of the sale price over the mortgage debt. But these two oral agreements and all others should be considered and construed together, and, so construing them, the meaning is that, if the land was not sold within a year, and it was not, the rights of the parties should be those of mortgagor and mortgagee; if it was sold within a year, the debt should stand satisfied.

The opinion states that the mortgagors do not offer to redeem from the mortgage, or ask for rescission, but seek to retain the benefit of the transaction without having the debt reinstated. The latter statement is incorrect. The mortgagors are not asking to be relieved of the mortgage debt. That debt must as matter of law be restored if the deed is canceled. As to offering to redeem, the mortgagors under the terms of the agreement as found by the court, and properly found as I view the evidence, are not bound to redeem presently or as condition of relief. They are entitled to cancellation of the deed, and that effects restoration of the mortgagor-mortgagee relation.

The opinion of the court ignores elements of the transaction which approach, if they do not constitute, actual fraud. The plaintiff, under the evidence of the mortgagor Stone, stated that the purpose of procuring the deed was to enable

him to effect a sale of the premises more readily, and that the mortgagors would have the same rights under the deed as they had under the mortgage. The transaction was proposed by the plaintiff; the deed was drawn at the direction of the plaintiff; the mortgagors went to sign the deed at the request of the plaintiff to the office of the scrivener selected by the plaintiff to prepare the deed for signature. These representations and this pressure by the plaintiff were proper for the court to consider, as was the fact that the value of the land was twice the mortgage debt, and these altogether justified the conclusion of the court that the plaintiff overreached the mortgagors, took advantage of their necessities to drive a hard bargain, and schemed to accomplish what would be in effect a fraud upon them.

The case has been tried by the trial court and facts found upon sufficient evidence that show the relations of the parties and the precise relief to which each party is entitled under those relations. That neither party in his pleading asked the precise relief to which he is entitled under the facts found, and those relations did not deprive the trial court from entering judgment determining the controversy and granting to each his proper relief. Under the facts found, the deed and mortgage satisfaction should have been canceled, the mortgage debt restored, the credit on defendants' other mortgage debt to plaintiff canceled, the amount found due on the restored mortgage debt determined, judgment of foreclosure entered, and the complaint dismissed as to the defendants other than the mortgagors. This, in my opinion, would have done equity and exact justice between the mortgagors and mortgagee, and that is what a court of equity should always do, as nearly as may be done, in actions before it. All a mortgagee is entitled to is a sale of the mortgaged premises in the manner provided by law, and application of the proceeds towards satisfaction of the mortgage debt, if before the time fixed for sale it is not paid by those personally liable for its

payment. Judgment as stated would have given to the plaintiff his full rights and given to the mortgagors opportunity to complete the loan applied for referred to in the opinion of the court, if so might be, or otherwise secured to them opportunity to save their $6,000 equity, if possible. It is true that the plaintiff would have been delayed a year in his foreclosure proceedings by entry of a judgment as above suggested. But the delay would have been on his own proposal and of his own making, and the result of his inability, or more likely his want of effort, to effect a sale of the premises within a year, as was contemplated by the mortgagors, whether intended by the mortgagee or not. A mortgagee is not likely to overexert himself to effect a sale under an agreement such as found by the court, when by effecting it he will only get payment of his debt, while, by not effecting it, he will, if his scheme succeeds, secure land of value equal to twice the debt.

A motion for a rehearing was denied, with $25 costs, on June 4, 1935.