ANDERSON, Appellant, vs. SAVOY, Respondent.

*October 23—November 10, 1908.*

*Appeal and error: Findings: Conclusiveness: Sales: Breaches: Right of action: Waiver: Measure of damages: Evidence.*

1. Findings of fact not contrary to the clear preponderance of the evidence will not be disturbed on appeal.

2. In an action on a contract for the sale of ice, a finding that the contract was modified by mutual agreement as to delivery of the full amount within the agreed time, is more in the nature of a conclusion of law than one of fact.

3. Plaintiff, under a contract for the sale of 400 tons of ice to be loaded for shipment from time to time as demanded by plaintiff between April 1 and October 1, ordered ice and received and used the same notwithstanding defendant had breached the agreement by failing to ship two cars a week as demanded and to pack that which was shipped in the manner agreed upon, and the defendant continued to ship ice within a reasonable time on orders notwithstanding plaintiff had not paid for prior shipments according to contract. It was undisputed that had ice been shipped at the rate of two cars per week as demanded, all would have been delivered within the time agreed upon, and that plaintiff had use therefor and did not refuse to receive ice until the close of the season and after the time limited by the contract for making deliveries. *Held*, that it was not a necessary inference from such circumstances that plaintiff waived the provisions of the agreement entitling him to the full amount, or that the minds of the parties met as to such waiver.

4. While plaintiff's demand for and receipt and appropriation of ice without objection, notwithstanding the breach, bound him to pay for what he obtained, it did not necessarily affect his right to damages caused by the delay in shipping according to the demand of two cars per week or for failure to seasonably forward to the full amount, and his conduct in that regard and defendant's consent to ship ice notwithstanding the delayed payments are perfectly consistent with plaintiff's retention of such right.

5. Damages for breach of contract, under ordinary circumstances, are limited to such as may be considered to arise according to the usual course of things from such breach and so must be regarded, reasonably, as having been in contemplation by the parties at the time of making the contract as the probable result of the breach of it, or, in the case of special circumstances,

such as may reasonably be supposed to have been in such contemplation in view thereof so far as such special circumstances were known to the parties at the time of making the contract.

6. Where plaintiff, under a contract for the sale of 400 tons of ice to be loaded for shipment from time to time as demanded by plaintiff between April 1 and October 1, ordered ice and received and used the same notwithstanding defendant had breached the agreement by failing to ship two cars a week as demanded, it is *held*, under the evidence, stated in the opinion, that there were no special circumstances to be dealt with in determining the damages to which plaintiff was entitled.

7. In such case the true measure of damages as to the ice not delivered is the difference between what the ice would have cost the plaintiff under the contract when he should have received the same and the fair market value at such time, with interest thereon, in case ice was reasonably obtainable in the market; otherwise the difference between the cost and what ice would have been actually worth to him when he ought to have received it.

TIMLIN, J., dissents.

APPEAL from a judgment of the circuit court for Waukesha county: MARTIN L. LUECK, Circuit Judge. *Reversed.*

Action to recover damages for breach of contract.

The cause was tried by a referee, who found as facts thus: February 17, 1904, defendant contracted to furnish plaintiff 400 tons of ice at $1 per ton, f. o. b. cars at Pewaukee, Wisconsin, shipments to be made at such times between April 1, 1904, and October 1, 1904, as demanded by plaintiff. One hundred dollars was paid down on the contract, and it was agreed that after delivery of 100 tons of ice settlements should be made weekly. In the latter part of May or first part of June, 1904, plaintiff demanded shipments of ice to commence and within a day or two one carload was sent forward. Thereafter whenever plaintiff demanded ice a carload was sent, up to July 7, 1904, at which time he demanded shipment of two cars a week, one on Tuesday and one on Friday, which request was not complied with. Nevertheless plaintiff continued to demand shipments of ice and from time to time some was shipped and accepted without objec-

tion. Defendant shipped ice to plaintiff without objection notwithstanding plaintiff failed to make weekly settlements according to the contract. Business was carried on as indicated till some time in October, 1904, when defendant was notified not to ship any more ice, whereupon he billed to plaintiff the ice shipped up to that time, giving him credit for payments made, and after mutual examination of the bill plaintiff told defendant he could not pay presently but would settle in a week. Plaintiff received and accepted 126 tons and 100 pounds of ice not settled for at the time of the commencement of the action. Some demurrage charges paid by plaintiff were incurred by his own neglect to unload cars according to the rules of the railroad company. He was required to pay full carload rates on some cars which, by fault of defendant, were not filled to their capacity, whereby he was damaged to the amount of $1. The written contract was modified by the conduct of plaintiff in ordering ice notwithstanding defendant had failed to strictly comply therewith, and the shipment of ice by defendant and acceptance of the same by plaintiff notwithstanding the latter's neglect to make weekly settlements as agreed upon. Plaintiff is entitled to credit for the $1 aforesaid, and defendant is entitled to judgment for $126.10, less the $1 allowed plaintiff. Judgment was rendered accordingly.

The cause was submitted for the appellant on the brief of *McGee & Jeger,* and for the respondent on that of *C. E. Armin.*

MARSHALL, J. The findings of fact, so called, do not appear to be contrary to the clear preponderance of the evidence, therefore they should not be disturbed. The one to the effect that the written contract for a sale by defendant to plaintiff of 400 tons of ice f. o. b. cars Pewaukee at a stipulated price, the same to be loaded for shipment from time to time as demanded by plaintiff between April 1 and October

1, 1904, was modified by mutual agreement as to delivery of the full amount within such time, is more in the nature of a conclusion of law than one of fact. It is based on these evidentiary circumstances: Appellant ordered ice and received and used the same notwithstanding respondent had breached the agreement by failing to ship two cars per week as demanded and to pack that which had been shipped in the manner agreed upon, and respondent continued to ship ice within a reasonable time on orders notwithstanding appellant had not paid for prior shipments according to contract.

Since it is undisputed in the evidence that had ice been shipped at the rate of two cars per week as demanded all would have been delivered within the time agreed upon and plaintiff had use therefor and did not refuse to receive ice till the close of the season and after the time limited by the writing for making deliveries, we are unable to see how it can be rightly said that the necessary inference from the circumstances found is that plaintiff waived the provision of the agreement entitling him to the full amount, or that the situation disclosed any probability that the minds of the parties met as to such waiver.

Appellant's demand for and receipt and appropriation of ice without objection, notwithstanding the breach, bound him to pay for what he obtained as being the kind of product contracted for, but did not, necessarily, affect his right to damages caused by the delay in shipping according to the demand for two cars per week or for failure to seasonably forward the full amount. His conduct in that regard and respondent's consent to ship ice notwithstanding the delayed payments are perfectly consistent with the former's retention of such right.

Though the foregoing requires a reversal of the judgment there is an insuperable difficulty in the litigation being finally terminated without some further proceedings in the trial court. The evidence in the record does not furnish any

legitimate basis for an assessment of damages according to the rules governing the subject.

No principle is better established than that damages for breach of contract, under ordinary circumstances, are limited to such as may be considered to arise according to the usual course of things from such breach and so must be regarded, reasonably, as having been in contemplation by the parties at the time of making the contract as the probable result of the breach of it, or, in case of special circumstances, such as may reasonably be supposed to have been in such contemplation in view thereof so far as such special circumstances were known to both parties at the time of such making. *Guetzkow Bros. Co. v. A. H. Andrews & Co.* 92 Wis. 214, 66 N. W. 119; *Gross v. Heckert,* 120 Wis. 314, 321, 97 N. W. 952. It is considered that there are no such special circumstances to be dealt with in this case. For aught that appears the contract was for the sale, delivery, and receipt of and payment for an ordinary article of merchandise during the late spring, the summer, and late fall months; an article not obtainable readily, and sometimes not at all, in large quantities, unless contracted for before the season opens or is far advanced, and which appellant depended upon, as is usually the case, to supply his retail trade during the season of active demand. The true measure of damages as to the property not delivered in such a case is the difference between what the same would have cost the purchaser under the contract when he should have received the same and the fair market value at such time with interest thereon in case of the subject of the transaction being reasonably obtainable in the market, otherwise the difference between such cost and what the property would have been actually worth to him when he ought to have received the same. *Hill v. Chipman,* 59 Wis. 211, 18 N. W. 160; *Muenchow v. Roberts,* 77 Wis. 520, 522, 46 N. W. 802; *T. B. Scott L. Co. v. Hafner-Lothman Mfg. Co.* 91 Wis. 667, 65 N. W. 513; *Kelley, Maus & Co. v. La Crosse C. Co.* 120 Wis. 84, 91, 97 N. W. 674.

The evidence in the record does not show with sufficient definiteness to warrant this court in finding that ice sufficient to make up the deficiency was not reasonably obtainable in the market at appellant's place or within practical reach therefrom. But if it were otherwise there is no proof of what ice shipped according to the contract would have been worth to appellant had the same been forwarded as agreed upon. The price he could have retailed the ice for is not the test. The evidence leaves the matter at that point. It was assumed that railroad weights at the shipping point would hold out in the retail trade at the delivery point, while it would seem that the fact may or must have been otherwise. In the very nature of things, the loss by melting and by cutting into shapes and quantities for customers would have been considerable. On the whole, it does not seem that there has been a fair trial of the question of damages with a proper appreciation of the legal rules applicable to the situation, so the court is of the opinion that the judgment must be reversed and the cause remanded for a new trial as to the amount of damages appellant is entitled to recover.

*By the Court.*—So ordered.

TIMLIN, J. (*dissenting*). This was an action at law for breach of the following contract: The defendant, residing at Pewaukee, agreed to furnish the plaintiff, residing at Wauwatosa, 400 tons of square ice for and at the agreed price of $1 per ton f. o. b. Pewaukee, railroad weights to be and govern the weight of the ice, and the ice to be loaded on cars and shipped at such time and times between April 1, 1904, and October 1, 1904, as demanded by the plaintiff, and the plaintiff agreed to pay $100 therefor at the signing of the agreement to apply on the first 100 tons of ice delivered, and after this quantity delivered to settle on each Monday for all ice shipped.

The findings supported by evidence established that the plaintiff demanded ice under this contract about June 1st by

telephone, and in the same manner thereafter, all of which he received. On July 7, 1904, plaintiff demanded that the defendant ship him two cars of ice every week thereafter, one on Tuesday and one on Friday. The defendant did not comply with this request, and the plaintiff resumed ordering ice by telephone, as he had been doing prior to this request, and the ice was delivered upon these subsequent telephone orders until about the middle of October, 1904, when plaintiff informed defendant that he need not ship any more ice. The defendant shipped ice as aforesaid after July 7, 1904, to the plaintiff, and continued to do so without objection, and plaintiff failed to settle for the ice on Monday of each week as agreed, and in that manner the parties continued to order and receive ice between the 7th day of July and the middle of October, 1904, all such orders by the plaintiff being filled except that of July 7th. Upon this the referee found as a conclusion of law, and such finding was confirmed by the court, as follows: "That the written contract of the parties to the above entitled action was modified by them by their subsequent conduct and dealing with reference thereto." The plaintiff was denied any right to recover on account of failure to ship two cars per week from and after July 7th, and for this reason he appeals.

I can see no reason for reversing the judgment of the court below in this case. The contract above quoted required the ice to be delivered as demanded by the plaintiff. It seems to me that this was done. One of his demands was not complied with, and he then substituted other and different demands, which were complied with. This was all done orally by telephone. It seems to me purely a question of fact whether or not the parties to this contract intended and understood that the mode of delivery between July 7 and October 15, 1904, was mutually satisfactory. In one sense the ice was delivered "as demanded by the second party;" that is to say, his later and substituted demands were complied with.

But there is another view of the facts calling for affirm-
ance.   After the order of July 7th for two carloads a week
until the whole amount remaining undelivered was shipped,
and the failure of the defendant to comply with that order,
there was at the expiration of the first week thereafter a total
breach of the contract.   The plaintiff was entitled to his
damages, but was not entitled to treat the contract as in force
and also as breached.   He elected to treat the contract as in
force, and went on demanding and receiving ice thereunder
as if the contract was in force.    *Voss v. N. W. Nat. L. Ins.
Co., post,* p. 492, 118 N. W. 212, and cases cited in the opin-
ion.   By not standing upon the breach, but thereafter claim-
ing and receiving advantages under the contract, he waived
the breach.   In the words of the present chief justice in
*Woodman v. Blue Grass L. Co.* 125 Wis. 489, at page 495
.(104 N. W. 921), "he cannot treat the repudiation both as a
breach and as no breach at the same time"—citing Benj.
Sales (7th Am. ed.) § 568; Anson, Cont. (2d Am. ed.) 371.

It is not in the case at bar a question of waiver of the right
to rescind, or of waiver of the right to recover damages, but
is a waiver of the alleged breach of July 7th by demanding
and accepting thereafter a different or modified performance
under a contract which gave the plaintiff the right.to direct
the manner and time of shipment.