ALTSCHULER, Respondent, vs. ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, Appellant.

*October 31—December 9, 1913.*

*Carriers: Contracts: Validity: Interstate transportation: Federal laws: Burden of proving illegality: Damages for breach of contract: Special circumstances: Delay in delivering baggage of orchestra: Inability to give concert: Evidence of losses.*

1. In an action for breach of contract for interstate transportation, the rule that Congress has the paramount right to legislate respecting interstate traffic has no application unless the contract was in violation of the federal law.
2. As a general rule, in actions for breach of contract a person can only be held responsible for such consequences as may be reasonably supposed to have been in the contemplation of the parties at the time of making the contract.

3. But where special circumstances exist, mutually known and contracted with reference to, the parties are presumed to have had in contemplation, as a result of the breach, such damages as may reasonably and fairly be considered as arising naturally, that is, in the usual course of things, from such breach under the special circumstances.

4. A common carrier contracting with the proprietor of an orchestra for a definite itinerary and to reach a certain city on a certain day at a specified hour in the forenoon, may be held responsible for the loss of receipts for a scheduled afternoon performance, although its agent had no knowledge that such performance was to be given, or the terms under which it was to be given.

5. The burden of proof is upon a carrier sued for a breach of a contract of transportation to prove the illegality of a contract if such illegality exists under the Interstate Commerce Act.

6. Where plaintiff, suing for breach of contract for the transportation of his orchestra and their baggage, was to receive a certain percentage of the gross receipts of an afternoon performance which could not be given because of such breach, he was properly allowed to recover such percentage of the total sale of tickets without deduction for possible expenses of which there was no evidence.

7. The evidence in such case upon which the jury based a finding that plaintiff lost a certain amount by reason of diminished attendance at the evening performance, caused by the delay in delivering the baggage, is *held* to be speculative and conjectural and hence insufficient to sustain such finding.

APPEAL from a judgment of the circuit court for Milwaukee county: F. C. ESCHWEILER, Circuit Judge. *Modified and affirmed.*

This action was brought to recover damages for the alleged breach of contract to transport the members of plaintiff's orchestra, their instruments and baggage from Denver, Colorado, to Milwaukee, Wisconsin, by failing to deliver the car containing the baggage and instruments to the Chicago, Milwaukee & St. Paul Railway Company at Chicago in time to make connections with a certain train, No. 5, leaving Chicago at 9:15 a. m. and arriving in Milwaukee at 11:15 a. m., May 30, 1911, in consequence of which the orchestra was unable to give a matinee performance at Milwaukee on the after-

noon of said day, and also in consequence of such delay the sale of tickets for the evening performance was diminished. Knowledge on the part of the defendant of the general business of the plaintiff and that the plaintiff was to give a matinee performance on the afternoon of the day in question is specifically alleged in the complaint.

The defendant answered by way of admissions and denials, admitting that the car containing the instruments and baggage was not delivered to the Chicago, Milwaukee & St. Paul Railway Company in time to be attached to train No. 5 and was not delivered to said company until noon of that day and arrived in Milwaukee about 7 o'clock that evening. All the allegations of the complaint tending to show knowledge on the part of the defendant that the object of having the baggage car arrive at Milwaukee on train No. 5 was to enable plaintiff to give a matinee performance in the afternoon were denied. Defendant denied certain other allegations of the complaint.

The Milwaukee A Capella Chor was made a party plaintiff, but on the trial the action was dismissed as to it.

The defendant moved for a directed verdict in its favor, which was denied. The jury returned the following verdict:

"(1) What was the amount in dollars of the sale for the afternoon performance? A. $1,300.

"(2) What was the amount in dollars, if any, of tickets for the evening performance that were lost on account of the delay in delivering the baggage? A. $900."

The usual motions were made by the defendant on the verdict and overruled and judgment entered in favor of the plaintiff upon the verdict for sixty-five per cent. of the damages returned, being the amount which it is alleged under the contract plaintiff was entitled to of the receipts.

Judgment was ordered by the court in favor of the plaintiff, *Jacob Altschuler,* for sixty-five per cent. of the gross receipts found by the jury. It was further adjudged that the Milwaukee A Capella Chor take nothing in the action.

For the appellant there was a brief by *Henry V. Kane, James L. Coleman,* and *Homer W. Davis,* attorneys, and *Robert Dunlap,* of counsel, and oral argument by *Mr. Kane* and *Mr. Coleman.*

For the respondent there was a brief by *George J. Graebner* and *Kanneberg, Cochems & Wolfe,* and oral argument by *Mr. Graebner.*

KERWIN, J. The principal issues in the case, as contended by appellant, are: (a) Did the defendant contract to transport the orchestra and baggage from Denver to Milwaukee? (b) Was the alleged contract legal? (c) Did defendant have notice that plaintiff wanted to use the baggage at Milwaukee in the afternoon for a matinee performance? and (d) What was the amount of plaintiff's legal damages?

1. The first two propositions may be considered together, because they involve the validity of the contract between plaintiff and defendant.

It is insisted that this case is ruled by the federal law, and that under it it must appear that the party sought to be charged, with full knowledge that such profit would be lost upon a breach by him, actually agreed to pay the same in the event of nonperformance; and furthermore that the plaintiff could not recover under the common law as laid down by the state courts. Several authorities are cited to these propositions by counsel for appellant. *Adams Exp. Co. v. Croninger,* 226 U. S. 491, 33 Sup. Ct. 148, is to the effect that Congress has the right to legislate respecting interstate traffic and that when Congress has acted such legislation is paramount to state laws on the same subject. But it is also held in that case that a common carrier cannot exempt himself from liability for his own negligence or that of his employees, but that the rigor of the rule may be modified by reasonable agreement with the shipper which does not include exemption from negligence.

The above and other similar cases cited by appellant are

not in point if the proof in the instant case does not establish that the contract was in violation of the federal law.

*Siggins v. C. & N. W. R. Co.* 153 Wis. 122, 140 N. W. 1128, merely holds that under the Interstate Commerce Act the interstate commission and the federal courts have exclusive jurisdiction of all claims for overcharges on interstate shipments whether they grow out of an excessive rate or out of misrouting.

In the instant case a *prima facie* case of breach of contract was made against the defendant in failing to transfer the baggage car at Chicago so as to be carried by train No. 5 over the Chicago, Milwaukee & St. Paul road to Milwaukee. The *prima facie* case was not met by defendant, or any explanation given why the baggage car was not transferred so as to be carried on train No. 5 as agreed. It is further argued that no case was made for damages because the agent of defendant at Denver, who made out the itinerary, was not informed and did not know that if the baggage did not arrive at Milwaukee on train No. 5 a matinee performance would be lost to plaintiff and the attendance of the evening performance greatly diminished; and that the agent did not know and was not informed of the contract of plaintiff, *Altschuler,* with the powerful and influential Chor Company, and the advertising used to make the performance attractive, hence that the damages sought to be recovered cannot be held to have been reasonably in contemplation of the defendant, in the absence of specific notice.

The cases cited on this point by counsel for defendant include *Howard v. Stillwell & B. Mfg. Co.* 139 U. S. 199, 11 Sup. Ct. 500; *Globe R. Co. v. Landa C. O. Co.* 190 U. S. 540, 23 Sup. Ct. 754; *Pennypacker v. Jones,* 106 Pa. St. 237; and the leading English case, *Hadley v. Baxendale,* 9 Exch. 341. But a careful examination of these cases convinces the court that they do not rule the instant case against the respondent. We shall not extend this opinion by a dis-

cussion of the great number of cases cited, but only briefly refer to a few claimed to be specially in point. It is true the general rule is that a person can only be held to be responsible for such consequences as may be reasonably supposed to be in the contemplation of the parties at the time of making the contract.

In *Howard v. Stillwell & B. Mfg. Co., supra,* suit was brought to recover balance on a contract for reconstruction of a mill. The contract provided that the company should so reconstruct the mill as to produce 200 more barrels of flour in twenty-four hours. The defense was loss of profits of $12,000 in the milling business during the delay. The item of damages was disallowed on the ground that the alleged damages were too remote and speculative and did not result from the breach alleged.

In *Globe R. Co. v. Landa C. O. Co., supra,* the court at page 543 laid down the rule thus:

"The extent of liability in such cases is likely to be within his contemplation, and, whether it is or not, should be worked out on terms which it fairly may be presumed he would have assented to if they had been presented to his mind. For instance, in the present case the defendant's mill and all its oil might have been burned before the time came for delivery. Such a misfortune would not have been an excuse, although probably it would have prevented performance of the contract. If a contract is broken the measure of damages generally is the same, whatever the cause of the breach. We have to consider, therefore, what the plaintiff would have been entitled to recover in that case, and that depends on what liability the defendant fairly may be supposed to have assumed consciously, or to have warranted the plaintiff reasonably to suppose that it assumed, when the contract was made."

*Pennypacker v. Jones, supra,* was similar in its facts, and it was held that the damages were too remote and speculative to form a basis for recovery.

*Southern R. Co. v. Reed,* 87 Fed. 149, is also relied upon by appellant. In that case Reed and his theatrical troupe

were passengers on defendant's railroad. The train was derailed. Suit was brought against the railway company. The principal question was whether Reed should be allowed damages for loss of profits of the troupe because prevented from meeting engagements at several places where they were scheduled to perform. The court said:

"In the absence of a definite contract for carriage to a given point by a given time, with such reasons for its making as would naturally lead the agent of the carrier to contemplate the profits the passenger expected to realize, it is clear that the damage claimed for the failure to realize such profits is too remote and uncertain, and that until competent proof tending to show such contract was offered and admitted it was error to admit any testimony in reference to the speculative profits which the passenger might have made if he had been safely carried through on schedule time."

*Bradley v. C., M. & St. P. R. Co.* 94 Wis. 44, 68 N. W. 410, is clearly not in point, because no information was given the defendant as to contents of boxes or of any special use to which the contents were to be put. In all the cases cited in appellant's brief on this point it appears that the railway companies had no knowledge of special circumstances charging them with notice.

In the case at bar there was knowledge of special circumstances. There was a definite itinerary prepared by defendant for the plaintiff. The defendant knew the nature of plaintiff's business and knew that plaintiff was to be guided by the itinerary in giving performances by his orchestra. The itinerary gave dates, time of arrival and departure at different points on the route, ending with arrival at Milwaukee on train No. 5 at 11:15 a. m. May 30th. It provided for "one (1) 60-foot end-door baggage car, which will be set at Denver for loading not later than noon, Thursday, May 25th, and run through all movements Denver to Milwaukee."

It is insisted by appellant that defendant did not have knowledge that a performance was to be given in the after-

noon. Whether it had such knowledge or not is immaterial. It did know of the general character of the plaintiff's business, that he was traveling to give performances, and was booked to arrive in Milwaukee in the forenoon of May 30th. The agent of defendant who prepared the itinerary testified that he had had considerable experience in handling itineraries for theatrical companies, and that he handled many during his four years' service at Denver, and that plaintiff's agent gave him information as to the route plaintiff was to take.

This court has many times laid down the rule as to what damages may be recovered under the rule of *Hadley v. Baxendale,* 9 Exch. 341. *Anderson v. Savoy,* 137 Wis. 44, 118 N. W. 217; *Foss v. Heineman,* 144 Wis. 146, 128 N. W. 881; *Guetzkow Bros. Co. v. A. H. Andrews & Co.* 92 Wis. 214, 66 N. W. 119; *Hammer v. Schœnfelder,* 47 Wis. 455, 2 N. W. 1129. The rule is firmly established in this court that the damages which may be recovered for breach of contract are such as may fairly and reasonably be considered as either arising naturally, that is, according to the usual course of things, from the breach of the contract itself, or such as may reasonably be supposed to have been in contemplation of both parties at the time they made the contract as the probable result of the breach of it. *Foss v. Heineman, supra.* Other cases in point: *Chappell v. Western R. of Ala.* 8 Ga. App. 787, 70 S. E. 208; *Western v. B. & M. R. Co.* 190 Mass. 298, 76 N. E. 1050; *Simpson v. L. & N. W. R. Co.* L. R. 1 Q. B. D. 274; *Jameson v. Midland R. Co.* 50 L. T. Rep. 426.

In *Foss v. Heineman, supra,* this court said:

"Extraordinary situations so mutually known and contracted with reference to, are liable to occur, and that gives rise to the necessary supplementary rule that, in any such a case, the parties are presumed to have had, at the inception of their agreement, in mutual contemplation as a result of the breach of it, such damages as may reasonably and fairly be

considered as arising according to the usual course of things from such breach under the special circumstances."

It is further contended by appellant that plaintiff is barred from recovery under the Interstate Commerce Act; that any agreement in relation to interstate transactions not evidenced by tariff and tickets is a violation of the act and illegal. The difficulty with this part of appellant's argument is that the facts do not support it. The contention of defendant under this head is that by the contract the plaintiff received some special favor or advantage repugnant to the federal law. But there is nothing in the evidence or record to support this position. On the contrary the record shows by admission in defendant's answer and stipulation in open court that plaintiff paid the lawful rate of fare and that the tariff rates material to the case were put in evidence and showed compliance by plaintiff and his troupe with such rates. So that *prima facie,* at least, the proof showed no violation of the federal law, and if any such there was it devolved upon the defendant to prove it. It does not appear that any service was given plaintiff that was not open to all and according to law. So the cases cited by appellant under this head have no bearing upon the instant case.

It is further urged that the plaintiff was not entitled to recover sixty-five per cent. of the amount found by the jury; and moreover that the findings are based upon improper and incompetent evidence.

The claim of the defendant is that since there was no afternoon performance some expense must have been saved, and that such amount should be deducted from the gross receipts as found by the jury. The baggage car not having arrived in time, no performance was held in the afternoon, and the jury found the amount in dollars of the sale of tickets for the afternoon performance. We think this claim of defendant cannot be sustained. The contract between plaintiff and the Milwaukee A Capella Chor allowed plaintiff sixty-five per

cent. of the gross receipts and the plaintiff made claim to such amount in making his case. The defendant offered no evidence on its part, nor did it attempt to draw any evidence from the plaintiff's witnesses on the subject, but permitted the plaintiff's *prima facie* showing to stand unquestioned. Under such circumstances we think the defendant cannot now contest in this court the plaintiff's right to recover sixty-five per cent. of the gross receipts.

On the point that the findings of the jury are based upon improper and incompetent evidence we have found some difficulty. Both findings are attacked by counsel for appellant. Without going into any lengthy discussion of the errors committed respecting proof of damages under the second finding of the jury regarding diminished attendance at the evening performance in consequence of the late arrival of the baggage car, it is sufficient to say that we think there is no sufficient competent evidence to support the finding. All the evidence offered on this finding was speculative and conjectural and could not form a basis from which the jury could find any damages. Much of the evidence admitted under objection was clearly incompetent. The evidence produced as to the gross receipts for the afternoon performance, and which were refunded because of the breach of the contract in failure to deliver the baggage car through the negligence of the defendant, was competent and sufficient to support the finding of the jury on the first question of the special verdict.

The judgment appealed from must therefore be modified by striking out the damages found in the second question and awarding judgment for sixty-five per cent. of $1,300.

*By the Court.*—The judgment is modified by reducing the amount of recovery to $845 damages and $87.28 costs in the court below; in all, damages and costs, $932.28, and as so modified is affirmed. The appellant is entitled to costs in this court.

BARNES, J. (*concurring*). I concur in the result. The defendant sold party-rate tickets as it had the right to do under the law, and the rate charged conformed to the published tariffs. A special contract, however, was made in reference to the transportation by which the defendant agreed to furnish certain kinds of cars for the accommodation of the party and also agreed to furnish a sixty-foot baggage car and to deliver it in Milwaukee at a specified time and when the passengers were scheduled to arrive. This contract might well give a preference or advantage so as to create an unjust discrimination under the Interstate Commerce Law. The defendant, however, failed to prove that no rule, regulation, or form of contract was published or filed whereby the same advantages were offered to all aggregations traveling under like circumstances and conditions. We cannot presume that the parties violated the law, and I think the absence of the proof is fatal to the defendant's contention that the contract was illegal. Had the proof suggested existed and been made, I should have reached a different conclusion on the merits of the case.

WINSLOW, C. J. I concur in the views expressed by Mr. Justice BARNES.